## FISCHER *v.* COLVIA.

CANCELLATION OF INSTRUMENTS—DEEDS—EVIDENCE—SUFFICIENCY.

In a suit to set aside a deed on the ground that it was procured by fraud, duress, and undue influence, the decree of the court below dismissing the bill, *held*, justified by the record.[1]

Appeal from Wayne; Jayne (Ira W.), J. Submitted June 11, 1926. (Docket No. 88.) Decided July 22, 1926.

Bill by Gustave H. Fischer, administrator of the estate of Augustina Ruttkowski, deceased, against Fred Colvia and another to set aside a deed. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Leopold Mayer* and *John C. Alexander,* for plaintiff.

*John G. Cross* (*Daniel P. Cassidy,* of counsel), for defendants.

SHARPE, J.    Wilhelm Ruttkowski and his wife,

---

[1] Deeds, 18 C. J. §§ 552, 553, 554.

Augustina, lived on a 50-acre farm in the township of Taylor in the county of Wayne for many years. They held title to this land by the entireties. Wilhelm died in September, 1923. A few days after his death, his widow, as survivor, conveyed the land to the defendants, who are husband and wife, reserving to herself a life estate in the same. The deed was—

"given in consideration of and on that said second party shall care for and nurse said first party during the remainder of her natural life."

Soon after the execution of the deed, Augustina went to visit relatives in Bay City. On January 15, 1924, the plaintiff, Gustave H. Fischer, a brother, was duly appointed guardian of her estate. Three days later, he as such guardian filed the bill of complaint herein, alleging that the grantor was mentally incompetent at the time the deed was made, and also that its execution was procured by fraud, duress, and undue influence, and praying that it be set aside. The defendants answered, denying all of the material allegations in the bill. After a hearing in the circuit court, a decree was entered dismissing the bill, from which plaintiff appeals. Pending the hearing in this court, Mrs. Ruttkowski died. The plaintiff was appointed administrator of her estate and the suit revived in his name as such.

These aged people had no children. They were both past 80 years of age when they passed away. In the year 1897, the defendant Louise Colvia (a niece of Mrs. Ruttkowski), then 13 years of age, was taken into their home. She was not formally adopted. In 1901, she married the other defendant. The farmhouse was then arranged so that both families lived in it. There was a door opening from the one part into the other. Wilhelm sold his personal property, and defendants bought a team and implements and stock and worked the farm until this suit was begun.

They paid the old people $130 rental each year, and paid the taxes and made considerable improvements on the buildings.

The plaintiff produced several witnesses who testified to facts tending to show the mental incompetency of the grantor at the time the deed was executed. The defendants produced an even greater number of witnesses whose testimony tended to negative this claim.     Mrs. Emma Spanick, who had known Mrs. Colvia when she was at school in Detroit, and who had visited her frequently, tells in detail how the deed to defendants came to be made.     She testified that Mr. Ruttkowski, not long before his death, when she was telling him about the trouble some of her relatives were having over property, said:

"That is foolish.     *     *     *     What is mine is my wife's and what is my wife's is Mrs. Colvia's and Fred Colvia's and nobody will touch anything."

That his wife, who was present, said:

"Yes, they lived with us so many years and no one would have nothing to say in our affairs.     *     *     * Just the way we are standing now everything is going to stand after our death; we are living here with Lizzie and Fred and they are going to continue here after us."

A few days after the funeral of Mr. Ruttkowski, Mrs. Ruttkowski said to her:

" 'I am glad you came because I want to talk to you because my brother molests me almost to death and I want to see what I can do, for Lizzie gets this property before I am crazy,' and she said 'Can you help me?' and I said 'What do you want me to help you?' and she said 'Get me a German notary public,' and I said 'Who shall I get?' and she said 'Whoever you know is German so I can talk to them.'     She told me what she wanted a notary public to do.     She said she wanted to sell the property to Mr. and Mrs. Colvia so it would go only to them.     She told me how she wanted it done.     She said 'I want to sell and give this property

to Lizzie and Fred and that they shall take care of me as long as they give me a dollar, so I have a dollar for the property,' and I called up the German notary public."

Mrs. Spanick took her papers to William Kraft, a notary public, and he prepared the deed and took it to the farm for execution. He testified that he asked Mrs. Ruttkowski why she wanted to make the deed and she said she had no children and the defendants for 20 years had taken care of her husband and herself and "it was no more than right to deed them the farm." That he read and explained the deed to her in German, and that she voluntarily executed it by making her mark. That she told him the farm was worth "between $4,500 and $5,000," and he put the necessary revenue stamps on it.

The trial court heard and saw the witnesses. He referred particularly to Mr. Kraft as a disinterested witness, who in his opinion told "a straightforward story." It will serve no useful purpose to further review the testimony. We are satisfied, as he was, that the proofs do not justify a finding of mental incompetency or undue influence.

The decree is affirmed, with costs to defendants.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.